**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**CASE NO: _____**

IN RE: MOTION TO QUASH
SUBPOENA FOR DEPOSITION
SERVED ON DAVID FRIEND

_____/

**MOTION TO QUASH FED. R. CIV. P. 45 SUBPOENA**
**FOR DEPOSITION DIRECTED TO DAVID FRIEND OR,**
**IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER**
**AND INCORPORATED MEMORANDUM OF LAW**

Subpoena Issued in the United States District Court for the
Southern District of Florida, Case No. 20-cv-22995-KMW,
*Silva Harapeti v. CBS Television Stations Inc., et al.*

BAKER & MCKENZIE LLP
*Attorneys for CBS Television Stations, Inc.*
452 Fifth Avenue
New York, NY 10018
Telephone: (212) 626-4100
Facsimile: (212) 310-1632

Blair J. Robinson, Esq.
New York Bar No. 5361209
blair.robinson@bakermckenzie.com

Paul C. Evans, Esq.
New York Bar No. 5824438
paul.evans@bakermckenzie.com

i

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ ii

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION AND BACKGROUND ................................................................................1

PROCEDURAL POSTURE........................................................................................................5

ARGUMENT ..............................................................................................................................7

   I.   THE APEX DOCTRINE OPERATES TO PROTECT MR. FRIEND, A FORMER
       EXECUTIVE, FROM DEPOSITION. ...................................................................7

       A.   Harapeti Cannot Show that Mr. Friend has Personal or Unique Knowledge Relevant
             to the Florida Action. .................................................................................................... 12

       B.   The Apex Doctrine Requires Harapeti to Make an Effort to Obtain The Information
             Sought from Mr. Friend Through Less Burdensome Means; She Has Not Done So
             Here. ............................................................................................................................. 19

  II.   TO THE EXTENT HARAPETI INTENDS TO RELY ON THE "SERVICE" OF THE
       FIRST SUBPOENA TO COMPEL MR. FRIEND TO SIT FOR A DEPOSITION, SUCH
       SERVICE WAS INEFFECTIVE AND THE SUBPOENA SHOULD BE QUASHED. . 22

CONCLUSION.........................................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Accurso v. Cooper Power Sys.*,
No. 06CV848S, 2008 U.S. Dist. LEXIS 47621 (W.D.N.Y. June 19, 2008) .................. 22, 23

*ADT LLC v. Vivint, Inc.*,
No. 17-cv-80432-DMM, 2017 U.S. Dist. LEXIS 216970 (S.D. Fla. Aug. 31, 2017) ........................................................................................................................... 8

*Alliance Indus. v. Longyear Holding, Inc.*,
No. 08CV490S, 2010 U.S. Dist. LEXIS 119973 (W.D.N.Y. Mar. 19, 2010) ........ 9, 10, 13, 20

*Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*,
No. 20 Misc. 23, 2020 U.S. Dist. LEXIS 145596 (S.D.N.Y. Aug. 13, 2020) ......................... 6

*In re Application of Effecten-Spiegel AG*,
No. 18mc93 (DLC), 2018 U.S. Dist. LEXIS 135838 (S.D.N.Y. Aug. 10, 2018)............ *passim*

*Brown v. Branch Banking & Trust Co.*,
No. 13-cv-81192, 2014 U.S. Dist. LEXIS 7721 (S.D. Fla. Jan. 22, 2014) ...................... 11, 20

*Burns v. Bank of America*,
No. 03 Civ. 1685 (RMB)(JCF), 2007 U.S. Dist. LEXIS 40037 (S.D.N.Y. June 4, 2007) ................................................................................................................... 10, 21

*Ciarrocchi v. Unum Grp.*,
2009 U.S. Dist. LEXIS 138532 (D.N.J. Aug. 27, 2009) ...................................................... 20

*Conforti v. St. Joseph's Healthcare Sys., Inc.*,
No. 2:17-cv-00050-CCC-CLW, 2019 U.S. Dist. LEXIS 138433 (D.N.J. Aug. 15, 2019) ......................................................................................................................... 10

*Cruz v. Sherea*,
No. 18-60995-Civ-Moore/Snow, 2019 U.S. Dist. LEXIS 180197 (S.D. Fla. Feb. 7, 2019) ......................................................................................................................... 8

*Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*,
2008 U.S. Dist. LEXIS 97862 (S.D.N.Y. Dec. 2, 2008) ................................................. *passim*

*Finerman v. Marriott Ownership Resorts*,
No. 3:14-cv-1154-J-32MCR, 2017 U.S. Dist. LEXIS 232168 (M.D. Fla. June 6, 2017) ............................................................................................................................. 7

*Ford Motor Co. v. Edgewood Props.*,
Civ. No. 06-1278, 2011 U.S. Dist. LEXIS 67227 (D.N.J. June 23, 2011) ............. 4, 10, 12, 19

*United States ex rel. Galmines v. Novartis Pharm. Corp.*,
No. 06-3213, 2015 U.S. Dist. LEXIS 109997 (E.D. Pa. Aug. 19, 2015)...................... 8, 10, 18

*George v. Pa. Tpk. Comm'n*,
No. 1:18-CV-766, 2020 U.S. Dist. LEXIS 92041 (M.D. Pa. May 27, 2020)......................... 12

*Guzman v. News Corp.*,
No. 09 Civ. 9323 (BSJ) (RLE), 2012 U.S. Dist. LEXIS 91031 (S.D.N.Y. June 29, 2012) ............................................................................................................................. 13, 18

*Hannah v. Wal-Mart Stores, Inc.*,
No. 3:12CV1361 (JCH), 2014 U.S. Dist. LEXIS 2971 (D. Conn. Jan. 10, 2014) ................................................................................................................................................ 6

*Kelsey v. Donley*,
No. 09-21125-CIV, 2009 U.S. Dist. LEXIS 69878 (S.D. Fla. July 30, 2009) ......................... 7

*Kenyon v. Simon & Schuster, Inc.*,
No. 16 Misc. 327 (P1), 2016 U.S. Dist. LEXIS 140917 (S.D.N.Y. Oct. 11, 2016) ........................................................................................................................................ 22, 23

*Mallory v. Wells Fargo Bank, N.A.*,
No. 3:19-cv-744, 2021 U.S. Dist. LEXIS 113332 (M.D. Pa. June 17, 2021) ............... 7, 8, 20

*Myun-Uk Choi v. Tower Research Capital LLC*,
No. 14-CV-9912 (KMW), 2019 U.S. Dist. LEXIS 204534 (S.D.N.Y. Nov. 22, 2019) ................................................................................................................................................ 9

*Office Depot, Inc. v. Elemetum Ltd.*,
No. 9:19-cv-81305, 2020 U.S. Dist. LEXIS 167215 (S.D. Fla. Sept. 14, 2020)................... 11

*Reif v. CNA*,
248 F.R.D. 448 (E.D. Pa. 2008)................................................................................... 18, 20

*Roberts v. Los Alamos Nat'l Sec., LLC*,
2015 U.S. Dist. LEXIS 158041 (W.D.N.Y. Nov. 23, 2015) ..................................................... 9

*Rodriguez v. SLM Corp.*,
No. 3:07CV1866 (WWE), 2010 U.S. Dist. LEXIS 29344 (D. Conn. Mar. 26, 2010) ................................................................................................................................................ 9

*Silva Harapeti v. CBS Television Stations, Inc., et al.*,
No. 20-cv-22995 ........................................................................................................ i, 1, 27

*Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*,
203 F.R.D. 98 (S.D.N.Y. 2001) ................................................................................................ 20

*In re Ski Train Fire of November 11, 2000 Kaprun Aus.*,
    MDL Dkt. # 1428, 2006 U.S. Dist. LEXIS 29987 (S.D.N.Y. May 16, 2006) .................. 9, 20

*Skytruck Co. v. Sikorsky Aircraft Corp.*,
    No. 2:09-cv-267-FtM-99SPC, 2011 U.S. Dist. LEXIS 160482 (M.D. Fla. May
    11, 2011) ...................................................................................................................... 20

*Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*,
    310 F.R.D. 523 (S.D. Fla. Sept. 15, 2015) ................................................................. 11, 19

*Taggart v. Wells Fargo Home Mortg., Inc.*,
    No. 10-cv-00843, 2012 U.S. Dist. LEXIS 139469 (E.D. Pa. Sept. 27, 2012) ......................... 8

*Tiger Capital, LLC v. PHL Variable Ins. Co.*,
    2013 U.S. Dist. LEXIS 121395 (S.D.N.Y. Aug. 26, 2013) .................................................. 12

*Tompkins v. Don Cesar Resort Hotel*,
    No. 8:10-CV-06460T-30EAJ, 2010 U.S. Dist. LEXIS 162780 (M.D. Fla.
    2010) .............................................................................................................................. 19

*Younes v. 7-Eleven, Inc.*,
    Civ. Nos. 13-3500, 13-3715, 13-4578 (RMB/JS), 2015 U.S. Dist. LEXIS
    191811 (D.N.J. Aug. 19, 2015) ................................................................................. 8, 12, 18

## Statutes

28 U.S.C. § 636(b)(1)(C) ............................................................................................................ 3

29 U.S.C. § 216(b) ...................................................................................................................... 2

Age Discrimination in Employment Act ...................................................................................... 2

Civil Rights Act of 1964 Title VII ................................................................................................ 2

Equal Pay Act 1936, 29 U.S.C. §§ 206, *et seq.* .................................................................... 2, 13

Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ..........................................................*passim*

Florida Civil Rights Act of 1992 ................................................................................................. 2

## Other Authorities

11th Cir. R. 3-1 ........................................................................................................................... 3

Fed. R. Civ. P. 26 ...................................................................................... 1, 2, 9, 11, 17 24

Fed. R. Civ. P. 30 ..............................................................................................................*passim*

Fed. R. Civ. P. 45 ..................................................................................................*passim*

S.D. Fla. L.R. 26.1(h) ..................................................................................................6

Pursuant to Rules 26(c)(1) and 45(d)(3)(A) of the Federal Rules of Civil Procedure, CBS Television Stations Inc., CBS Broadcasting, Inc., and CBS Corporation (collectively, "Movant" or "CBS"), by and through undersigned counsel, hereby file this Motion to Quash or, in the Alternative, Motion for Protective Order ("Motion") and respectfully request that this Court quash the non-party subpoena dated July 27, 2021 and August 10, 2021 directed to David Friend (the "First Subpoena" and the "Subpoena," respectively) issued by Silva Harapeti, Plaintiff in the case styled *Silva Harapeti v. CBS Television Stations, Inc., et al.*, No. 20-cv-22995, currently pending before the United States District Court for the Southern District of Florida (the "Florida Action").[1] A copy of the First Subpoena is attached hereto as **Exhibit A**, and a copy of the Subpoena is attached hereto as **Exhibit B**.  Non-party David Friend ("Mr. Friend") is one of Movant's former executives and the First Subpoena was purportedly served on Mr. Friend in New York and, therefore, this District is the proper venue for this Motion.[2]

## INTRODUCTION AND BACKGROUND

Apparently dissatisfied with her limited discovery efforts, Silva Harapeti ("Harapeti") now seeks to unduly burden and harass both Movant and one of Movant's former executives, Mr.

---

[1] The First Subpoena was issued by Harapeti in a separate case, Case No. 20-cv-20961 (S.D. Fla.). *See infra* n.5.

[2] "[T]he court for the district *where compliance is required* must enforce th[e] duty" to avoid undue burden. Fed. R. Civ. P. 45(d)(1) (emphasis added).  Likewise, Rule 26 provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—*or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken.*" Fed. R. Civ. P. 26(c)(1) (emphasis added). This Court, therefore, is the proper venue for this Motion.  *See id.*; Fed. R. Civ. P. 45(c)(1)(A); *see also* Notes of Advisory Committee on 2013 Amendments to Fed. R. Civ. P. 45 ("To protect local nonparties, local resolution of disputes about subpoenas is assured by the limitations of Rule 45(c) and the requirements in Rules 45(d) and (e) that motions be made in the court in which compliance is required under Rule 45(c).").

Friend, with a deposition. Yet, all of the discovery taken to date makes it abundantly clear that Mr. Friend harbors no personal or unique knowledge relevant to Harapeti's underlying allegations in the Florida Action, a fact that Mr. Friend himself confirms in a declaration submitted herewith. The robust protections of the apex doctrine operate to safeguard Movant and its executives, such as Mr. Friend, from depositions where it is evident that the deponent has no personal knowledge relevant to the issues at hand. Simply by virtue of his former position, the apex doctrine assumes that Mr. Friend's deposition is unduly burdensome under Rule 45 of the Federal Rules of Civil Procedure and that Movants are otherwise entitled to a protective order under Rule 26(c)(1). Harapeti cannot overcome this assumption here and, therefore, the Subpoena should be quashed.

Harapeti previously worked as a freelance[3] news reporter and producer at the CBS-owned-and-operated television station located in Miami, Florida: WFOR-TV ("WFOR"). On May 26, 2020, Plaintiff commenced the Florida Action in the U.S. District Court for the Southern District of Florida, alleging age and gender discrimination and retaliation claims under the Equal Pay Act 1936, 29 U.S.C. §§ 206, *et seq.* ("EPA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the Florida Civil Rights Act of 1992 ("FCRA"). Although Harapeti originally filed her EPA claim in the Florida Action as collective action under 29 U.S.C. § 216(b) seeking to certify a nationwide class of female news reporters or producers who from any time between 2011 and the present were not paid equally when compared to their male counterparts, the Court in the Florida Action denied and dismissed Harapeti's class claim. *See* Florida Action, at (ECF No. 64, Order Adopting Report & Recommendation) (denying

---

[3] The term "freelance" refers to those employees who were paid a day rate, otherwise known as "per diem," *i.e.*, employees who received a set amount of pay for each day they worked, regardless of the number of hours. *See* Florida Action, at (ECF No. 40, Harapeti's Third Amended Complaint) at ¶¶ 18–19.

Harapeti's motion for conditional certification) and (ECF No. 73, Report & Recommendation on Motion to Dismiss) (recommending dismissal of all of Harapeti's collective action claims).[4]

Thus, the matters material to the Florida Action are Harapeti's employment; her pay and the pay of other male (gender-based claims) and younger female (age-based claims) freelance reporters and producers at WFOR in Miami; and the individualized allegations of discrimination and harassment allegedly suffered by Harapeti at the hands of her supervisors at WFOR and nobody else. Discovery to date, along with Mr. Friend's declaration attached hereto, demonstrates that Mr. Friend has no knowledge relevant to any of these topics. In light of any actual connection to the Florida Action, as set forth more fully below, it is clear that the only purpose behind Mr. Friend's deposition is harassment.[5]

The apex doctrine counsels a court to exercise the appropriate mechanisms to protect Movant and its executives such as Mr. Friend so that they "[1] are not subjected to the burdens of discovery without a showing that they are likely to have information useful to the litigation that

---

[4] While the Report & Recommendation (ECF No. 73) recommending dismissal of all of Harapeti's collective action claims has yet to be adopted by the District Judge in the Florida Action, Harapeti did not object to the recommendation. Thus, Harapeti is barred from having a *de novo* review of the recommendation performed by the District Judge in the Florida Action and further barred from challenging the decision on appeal. *See* 28 U.S.C. § 636(b)(1)(C); 11th Cir. R. 3-1.

[5] Harapeti also filed another case on January 29, 2020 against CBS Television Stations, Inc. *et al.* alleging overtime violations under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") (the "FLSA Action"). As described *infra*, Harapeti originally issued the Subpoena in the FLSA Action. Due to procedural infirmities, see *infra*, Harapeti was forced to re-issue the Subpoena, and did so in the Florida Action as opposed to the FLSA Action as she originally did, presumably in order to avoid the August 13, 2021 discovery deadline in the FLSA Action. (The discovery deadline in the Florida Action is not until August 30, 2021, and the Subpoena sets Mr. Friend's deposition for August 27, 2021. While the parties have agreed that discovery taken in one action is admissible in the other, the two cases have not been consolidated for purposes of discovery.) Regardless of which lawsuit Harapeti intends for the Subpoena to relate to, it is evident that Mr. Friend has no knowledge of, or involvement in, any employment decisions concerning Harapeti herself or the pay of freelance news reporters and producers at WFOR. *See infra* Argument, Section I(A). Therefore, Mr. Friend lacks any "personal or unique knowledge" relevant to the FLSA Action such that his deposition would be permissible under the apex doctrine in that lawsuit.

[2] cannot fairly and with less burden be found elsewhere." *In re Application of Effecten-Spiegel AG*, No. 18mc93 (DLC), 2018 U.S. Dist. LEXIS 135838, at *4 (S.D.N.Y. Aug. 10, 2018); *see also Ford Motor Co. v. Edgewood Props.*, Civ. No. 06-1278, 2011 U.S. Dist. LEXIS 67227, at *12 (D.N.J. June 23, 2011) (applying the apex doctrine (1) where the executive lacks "personal or unique knowledge on relevant subject matters," and (2) if the party seeking the executive's deposition has not first exhausted "less burdensome means").   Harapeti can satisfy neither prerequisite.

Mr. Friend is the former Senior Vice President of News.   His responsibilities were those one would expect of an executive in his position—high-level strategy and executive-level oversight of the news operations at 13 of the 29 local CBS owned-and-operated television stations located throughout the United States.[6]   Mr. Friend was not involved in the day-to-day minutiae of managing WFOR's individual employees, including Harapeti, with respect to hiring, firing, or pay—these responsibilities were left to local management at WFOR.   Indeed, Mr. Friend has no knowledge of Harapeti, and confirms that he was not consulted on, nor has any knowledge with respect to, any decisions regarding Harapeti's employment, including with respect to her pay, requests for promotions, or any alleged complaints she may have made to her immediate supervisors at WFOR.   Thus, it is evident that Mr. Friend lacks any personal knowledge regarding the alleged underlying conduct that may be relevant to Harapeti's claims in the Florida Action. All of the local upper-level management at WFOR deposed to date have confirmed the same.   Nor has Harapeti made any effort to obtain the discovery she seeks from Mr. Friend through less intrusive means such as a Rule 30(b)(6) corporate representative or through interrogatories to the

---

[6] Mr. Friend was responsible only for news operations.  Only 13 of the 29 local CBS owned-and-operated television stations have news departments.

Movant.  In circumstances such as this, as explained more fully below, the well-recognized protections of the apex doctrine apply and require that the Subpoena be quashed.

Moreover, to the extent Harapeti wishes to rely on the service purportedly accomplished on Mr. Friend on August 7, 2021, such service was legally ineffective as Harapeti failed to comply with the service requirements under Rule 45 and Second Circuit precedent.  This Court has a vested interest in protecting deponents from errant subpoenas issued by far-away litigants who elect to ignore the law.

## PROCEDURAL POSTURE

On June 15, 2021, Harapeti served a Notice of Deposition for the deposition of Mr. Friend in the FLSA Action, scheduling the same for August 10, 2021.  *See* Declaration of Blair Robinson, Esq., attached hereto as **Exhibit C**, at ¶ 4.  On July 20, 2021, Harapeti's counsel was advised that Mr. Friend was no longer employed by CBS and that his attendance at deposition could not be compelled via notice, but Mr. Friend would need to be subpoenaed.  *Id.* at ¶ 5.

On August 10, 2021, at approximately 9:00 AM, Harapeti's counsel, *for the first time*, notified undersigned counsel that a subpoena had been issued for Mr. Friend's deposition in the FLSA Action (the "First Subpoena") and that such subpoena scheduled Mr. Friend's deposition for the *same day* said notice was provided, August 10, 2021, and only one hour later.  *Id.* at ¶ 6.  Although the Certificate of Service annexed to the First Subpoena certifies that the First Subpoena was emailed to the undersigned on July 27, 2021, this is untrue—at no point prior to the August 10th email did Harapeti's counsel notify the undersigned that the First Subpoena had been issued or that Mr. Friend's deposition was scheduled for August 10, 2021.  *See id.* at ¶ 6.

Immediately upon receiving the First Subpoena, undersigned counsel advised counsel for Harapeti of his obligations under the Local Rules of the issuing Court, the U.S. District Court for

the Southern District of Florida.  *Id.* at ¶ 7.  Specifically, Harapeti's counsel was reminded that

pursuant to Local Rule 26.1(h), "a party desiring to take the deposition in another State of any

person upon oral examination *shall give at least fourteen (14) days' notice in writing to every other*

*party to the action and the deponent* (if the deposition is not of a party)."  *See id.* (quoting S.D.

Fla. L.R. 26.1(h)) (emphasis added).[7]

Upon realizing the obvious noncompliance with applicable Local Rules, on August 10,

2021, Harapeti issued another subpoena for Mr. Friend's deposition (the Subpoena).  *See id.* at ¶

8.  Unlike the First Subpoena, the Subpoena was not issued in the FLSA Action, but was instead

issued in the Florida Action.  *See id.*  The Subpoena schedules Mr. Friend's deposition for August

27, 2021.  *Id.*

As of this submission, it is unclear whether Mr. Friend has been served with the Subpoena,

or whether Harapeti intends to rely on the "service" of the First Subpoena that was purportedly

accomplished on August 7, 2021.[8]  To the extent Harapeti intends to rely on the "service" of the

---

[7] Moreover, Harapeti's purported "service" of the First Subpoena on August 7, 2021 and attempt to command Mr. Friend to appear for deposition on August 10, 2021 *in a case pending in Florida that he is not a party to* a mere two (2) business days later is patently unreasonable under Rule 45. *See* Fed. R. Civ. P. 45(d)(3)(A)(i) (requiring a court to quash a subpoena that "fails to allow a reasonable time to comply"). Because Harapeti provided Mr. Friend with only three (3) days to comply—and only two (2) business days—the First Subpoena would have been due to be quashed. "[I]n this circuit . . . notice of a week or less has generally been considered unreasonable." *See Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*, No. 20 Misc. 23, 2020 U.S. Dist. LEXIS 145596, at *5 (S.D.N.Y. Aug. 13, 2020) (citations omitted); *see also id.* (four days between service and the deposition "did not afford . . . a reasonable time to comply"). Further, as noted, the Local Rules for the Southern District of Florida, where the Subpoena was issued, demonstrate that this time amount of notice was facially inappropriate. Given that Harapeti has issued another subpoena (the Subpoena) to Mr. Friend for a deposition on August 27, 2021, see *infra*, this issue is now moot.

[8] Mr. Friend is no longer employed by CBS. Therefore, to the extent the Subpoena references a "Notice of Deposition," such a notice is insufficient to compel Mr. Friend's deposition under Federal Rule of Civil Procedure 30 under both Second Circuit and Eleventh Circuit precedent. *See Hannah v. Wal-Mart Stores, Inc.*, No. 3:12CV1361 (JCH), 2014 U.S. Dist. LEXIS 2971, at *15 (D. Conn. Jan. 10, 2014) ("[I]f plaintiffs still wish to depose [two former employees of the

First Subpoena, such service was legally ineffective, *infra* Argument, Section II, and improper for the additional reason that the First Subpoena was not issued in the Florida Action.  (It is obvious that Harapeti served the Subpoena in the Florida Action as opposed to the FLSA Action in order to avoid the FLSA Action's discovery deadline of August 13, 2021.)

Regardless of whether Harapeti intends to rely on the August 7th service of the First Subpoena, or intends to serve Mr. Friend with the Subpoena, the result is the same—the Subpoena (and/or the First Subpoena) should be quashed, or a protective order granted, pursuant to the apex doctrine.  (The First Subpoena should be quashed for the additional reason that "service" upon Mr. Friend was legally ineffective under Second Circuit law.)

## **ARGUMENT**

## I. **THE APEX DOCTRINE OPERATES TO PROTECT MR. FRIEND, A FORMER EXECUTIVE, FROM DEPOSITION.**

Mr. Friend is the former Senior Vice President of News in the "CBS Televisions Stations" business unit within ViacomCBS (the "CBS Television Stations Group").  In this role, during all relevant times, Mr. Friend was responsible for overseeing, at a high level, the news departments

---

defendants], they shall issue subpoenas for their appearance."); *Kelsey v. Donley*, No. 09-21125-CIV, 2009 U.S. Dist. LEXIS 69878, at *3-4 (S.D. Fla. July 30, 2009) (citing Fed. R. Civ. P. 30(a)(1)) (noting that the "proper way" to secure a non-party former employee's appearance "is through a subpoena, rather than by a notice of deposition . . ."); *see also Finerman v. Marriott Ownership Resorts*, No. 3:14-cv-1154-J-32MCR, 2017 U.S. Dist. LEXIS 232168, at *4 n.1 (M.D. Fla. June 6, 2017) (holding that plaintiffs "failed to show that they have issued a valid non-party subpoena for the supplemental deposition of [the corporation's former vice president], a prerequisite to compelling a non-party deposition") (collecting cases).  Other Circuits have recognized this requirement, as well.  *See Mallory v. Wells Fargo Bank, N.A.*, No. 3:19-cv-744, 2021 U.S. Dist. LEXIS 113332, at *5 n.2 (M.D. Pa. June 17, 2021) (crediting defendant's argument that "the Notices issued to the former CEOs are all procedurally improper as these individuals are no longer employed by [defendant]' . . . [T]he proper course of action to depose such former CEOs would have been to subpoena them pursuant to Federal Rule of Civil Procedure 45.") (citations omitted).

at 13 local CBS owned-and-operated television stations operating throughout the United States.[9] *See* Declaration of David Friend ("Friend Decl."), attached hereto as **Exhibit D**, at ¶ 4.  In this role, Mr. Friend was not involved in the day-to-day management of personnel at each individual television station's news department.  *See id.* at ¶ 6.  Indeed, Mr. Friend states that personnel decisions at the local station level, including, notably, the hiring and firing of news employees and the setting of their pay, were decisions made by local management.  *See id.* at ¶¶ 6–7, 9, 15.  More specifically, Mr. Friend was not involved in, nor has any knowledge of, any facts that may be relevant to Harapeti's claims in the Florida Action.  *See id.* at ¶¶ 6–15.  Put simply, Mr. Friend is the precise type of high-level executive the apex doctrine is designed to protect.[10]

---

[9] There are 29 CBS owned-and-operated local television stations.  Of these 29, only 13 have news departments.  *See* **Ex. D**, Friend Decl., at ¶¶ 2–8.  These local television stations are owned by a patchwork of CBS-affiliated legal entities.  The station where Plaintiff worked, WFOR, is owned by CBS Television Stations, Inc., one of the named defendants in the Florida Action.

[10] That Mr. Friend is no longer employed by CBS does not negate application of the doctrine in the slightest—the protections of the apex doctrine apply to former high-ranking corporate officials. *See, e.g.*, *In re Application of Effecten-Spiegal AG*, No. 18mc93 (DLC), 2018 U.S. Dist. LEXIS 135838, at *4 (S.D.N.Y. Aug. 10, 2018); *Mallory v. Wells Fargo Bank, N.A.*, No. 3:19-cv-744, 2021 U.S. Dist. LEXIS 113332, at *5 (M.D. Pa. June 17, 2021) (applying the apex doctrine to grant a motion to quash and for a protective order for, *inter alia*, three former CEOs); *Younes v. 7-Eleven, Inc.*, Civ. Nos. 13-3500, 13-3715, 13-4578, (RMB/JS), 2015 U.S. Dist. LEXIS 191811, at *12–13 (D.N.J. Aug. 19, 2015) (denying deposition of a former executive vice president and chief operating officer who had no personal and unique knowledge that could not be obtained from other witnesses); *United States ex rel. Galmines v. Novartis Pharm. Corp.*, No. 06-3213, 2015 U.S. Dist. LEXIS 109997, at *2, *6–8 (E.D. Pa. Aug. 19, 2015) (quashing the deposition of the defendant's former CEO); *Taggart v. Wells Fargo Home Mortg., Inc.*, No. 10-cv-00843, 2012 U.S. Dist. LEXIS 139469, at *11, *14 (E.D. Pa. Sept. 27, 2012) (granting motion for protective order to prevent the deposition of the defendant corporation's former vice president, who had no first-hand knowledge of the relevant facts).  The same is true under Eleventh Circuit precedent, where the Florida Action is pending.  *See ADT LLC v. Vivint, Inc.*, No. 17-cv-80432-DMM, 2017 U.S. Dist. LEXIS 216970, at *3–4 (S.D. Fla. Aug. 31, 2017) (granting protective order to prevent depositions of three former corporate officials where the party seeking their depositions failed to exhaust less intrusive means of obtaining the information sought, including by failing to depose a Rule 30(b)(6) corporate representative); *Cruz v. Sherea*, No. 18-60995-Civ-Moore/Snow, 2019 U.S. Dist. LEXIS 180197, at *8–9 (S.D. Fla. Feb. 7, 2019) ("[A] former high ranking public official . . . is entitled to heightened protection from deposition even after leaving that office, similar to the ongoing protections afforded to former executives in the private sector.").  Indeed, "[t]he standards that

The robust protections of the apex doctrine exist to shield high-level corporate executives from depositions where they lack personal and unique knowledge on subject matter relevant to the lawsuit at hand. *See Myun-Uk Choi v. Tower Research Capital LLC*, No. 14-CV-9912 (KMW), 2019 U.S. Dist. LEXIS 204534, at *5 (S.D.N.Y. Nov. 22, 2019) (noting that the apex doctrine provides senior corporate executives with "'an addition[al] layer of protection' from the intrusion of depositions"). "Undergirding this protective principle . . . is Rule 26(b)(2), which limits discovery that is unreasonably cumulative or duplicative or is obtainable from a 'more convenient, less burdensome, or less expensive' source." *Id.* (citing Fed. R. Civ. P. 26(b)(2)). Indeed, courts in this Circuit "disfavor requiring the depositions of senior executives unless they have personal knowledge or relevant facts or some unique knowledge that is relevant to the action." *In re Ski Train Fire of November 11, 2000 Kaprun Aus.*, MDL Dkt. # 1428, 2006 U.S. Dist. LEXIS 29987, at 29-30 (S.D.N.Y. May 16, 2006); *Roberts v. Los Alamos Nat'l Sec., LLC*, 2015 U.S. Dist. LEXIS 158041 (W.D.N.Y. Nov. 23, 2015) (collecting cases and noting that courts "in the Second Circuit routinely grant protective orders to bar depositions of high ranking officials . . . with no personal or unique knowledge of relevant facts"); *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 2008 U.S. Dist. LEXIS 97862, at *5 (S.D.N.Y. Dec. 2, 2008) ("[S]enior executives should be deposed *only* if they possess unique personal knowledge related to the relevant issues in the case." (emphasis added)). Additionally, under the doctrine, courts protect an executive from deposition where the testimony "would be cumulative to testimony from other sources." *Alliance*

---

govern depositions of corporate executives apply with equal force to former executives." *Rodriguez v. SLM Corp.*, No. 3:07CV1866 (WWE), 2010 U.S. Dist. LEXIS 29344, *6 (D. Conn. Mar. 26, 2010) (granting defendants' motion for a protective order quashing the deposition subpoenas of two former senior-level executives).

*Indus. v. Longyear Holding, Inc.*, No. 08CV490S, 2010 U.S. Dist. LEXIS 119973, at *12 (W.D.N.Y. Mar. 19, 2010).[11]

Thus, the inquiry is twofold:  the party seeking the deposition must show (1) that the executive is "unique personal knowledge related to the relevant issues in the case," *Diesel Props*, 2008 U.S. Dist. LEXIS 97862, at *5; and (2) that the information sought "cannot fairly and with less burden be found elsewhere."  *See In re Application of Effecten-Spiegel AG*, No. 18mc93 (DLC), 2018 U.S. Dist. LEXIS 135838, at *4 (S.D.N.Y. Aug. 10, 2018) (holding that courts in this District "must be vigilant so that CEOs (and former CEOs) and those in control of large institutions are not subjected to the burdens of discovery without a showing that they are likely to have information useful to the litigation that cannot fairly and with less burden be found elsewhere"); *Alliance Indus.*, 2010 U.S. Dist. LEXIS 119973, at *12; *see also Ford Motor Co. v. Edgewood Props.*, Civ. No. 06-1278, 2011 U.S. Dist. LEXIS 67227, at *12 (D.N.J. June 23, 2011) (holding that the party seeking to take the apex deposition must make a showing  (1) that "the executive or top-level employee has personal or unique knowledge on relevant subject matters"; and (2) that the information sought cannot "be obtained from lower-level employees or through less burdensome means, such as interrogatories." (citation and quotation omitted)).  Where a party "fail[s] to demonstrate a need for [the executive's] testimony, and the likelihood of harassment is significant," courts have applied the apex doctrine to preclude the executive's deposition.  *See Burns v. Bank of America*, No. 03 Civ. 1685 (RMB)(JCF), 2007 U.S. Dist. LEXIS 40037, at *11 (S.D.N.Y. June 4, 2007); *see also Novartis Pharms. Corp.*, 2015 U.S. Dist. LEXIS 109997, at *4

---

[11] Additionally, courts generally "afford greater protection to non-parties in discovery."  *Conforti v. St. Joseph's Healthcare Sys., Inc.*, No. 2:17-cv-00050-CCC-CLW, 2019 U.S. Dist. LEXIS 138433, at *2 (D.N.J. Aug. 15, 2019).  Indeed, as this District acknowledges, "nonparty subpoenas must meet a higher standard of relevance than subpoenas directed toward parties."  *Id.*  As Mr. Friend is not a party to the Florida Action, Plaintiff must show that Mr. Friend's testimony is highly relevant to the Florida Action—a burden Plaintiff cannot meet.  *See infra.*

(noting that the apex doctrine carries "a rebuttable presumption that a high-level official's deposition represents a significant burden upon the deponent and that this burden is undue absent the two factors set forth in the apex doctrine, which go to the lack of a more convenient, less burdensome, and less expensive alternative").  Absent evidence that Mr. Friend has personal or unique knowledge relevant to the issues in the Florida Action, and that Harapeti has sought to obtain such information through less burdensome means, his deposition is presumptively unduly burdensome and harassing under both Rule 26 and Rule 45 of the Federal Rules of Civil Procedure such that the Subpoena should be quashed.  *See* Fed. R. Civ. P. 45(d)(3)(A)(iv) (providing that a court "must quash or modify a subpoena that . . . subjects a person to undue burden"); Fed. R. Civ. P. 26(c)(1) (providing that, a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense").[12]

Harapeti cannot avoid application of the apex doctrine to Mr. Friend's deposition.  Mr. Friend has absolutely no unique knowledge of the subject matter of the Florida Action, nor has Harapeti made any effort to obtain whatever information she believes Mr. Friend possesses through less intrusive means, such as, but not limited to, a corporate representative deposition

---

[12] The Eleventh Circuit, where the Florida Action is pending, also regularly invokes the apex doctrine where the party seeking to depose a high-ranking executive failed to show that the executive has unique, non-repetitive knowledge of the relevant facts and that less burdensome means of discovery have not yet been exhausted  *See Office Depot, Inc. v. Elemetum Ltd.*, No. 9:19-cv-81305, 2020 U.S. Dist. LEXIS 167215, at *8 (S.D. Fla. Sept. 14, 2020) (providing that a party seeking to depose a high-ranking corporate officer "has the burden to demonstrate that the executive: (1) has unique, non-repetitive, first-hand knowledge of the facts at issue; and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success" (internal quotation and citation omitted)); *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. Sept. 15, 2015); *Brown v. Branch Banking & Trust Co.*, No. 13-cv-81192, 2014 U.S. Dist. LEXIS 7721, at *7 (S.D. Fla. Jan. 22, 2014) (citation omitted) (noting that since high-ranking officers, "by virtue of their position," are "vulnerable to numerous, repetitive, harassing, and abusive depositions," they "therefore need some measure of protection from the courts").

under Federal Rule of Civil Procedure 30(b)(6) or interrogatories to the named defendants in the

Florida Action.

> **A.  Harapeti Cannot Show that Mr. Friend has Personal or Unique Knowledge Relevant to the Florida Action.**

Mr. Friend has absolutely no knowledge of facts relevant to the subject matter of the Florida

Action.  That the executive possesses *some* knowledge of relevant facts is insufficient to override

the protections of the apex doctrine.  The doctrine requires more, and courts have precluded

depositions of executives who have "had some familiarity" with relevant issues but nonetheless

lack "superior or unique knowledge" of the events in question.  *See George v. Pa. Tpk. Comm'n*,

No. 1:18-CV-766, 2020 U.S. Dist. LEXIS 92041, at *5 (M.D. Pa. May 27, 2020) (precluding

deposition of executive with "some familiarity" concerning two firing decisions where his

knowledge "appear[ed] to be inferior to that of the actual decision-maker"); *see also Ford Motor

Co.*, 2011 U.S. Dist. LEXIS 67227, at *14 (finding that the executive's signature on a relevant

memorandum was not proof of "personal or unique knowledge"); *Younes v. 7-Eleven, Inc.*, Civ.

Nos. 13-3500, 13-3715, 13-4578, (RMB/JS), 2015 U.S. Dist. LEXIS 191811, at *12 (D.N.J. Aug.

19, 2015) ("The fact that [the former executive] may have signed off on some paperwork is not a

sufficient reason to depose him.").  For example, in *Tiger Capital LLC v. PHL Variable Insurance

Company*, for example, the court denied the request to compel the executive's deposition where

the executive was "removed from . . . day-to-day business dealings" and was "merely advised" of

the relevant facts and "did not play an active role" in them.  *Tiger Capital, LLC v. PHL Variable

Ins. Co.*, 2013 U.S. Dist. LEXIS 121395, at *9 (S.D.N.Y. Aug. 26, 2013).  Similarly, in *Alliance

Industries v. Longyear Holding, Inc.*, the court granted the motion for a protective order where,

although the plaintiff "point[ed] broadly" to the executive's role with the relevant issues

(acquisition research, negotiations, and post-acquisition operations), the executive did not have

"unique knowledge about the major areas in dispute" or about the "particular aspects" of the matters in question.  *See Alliance Indus.*, 2010 U.S. Dist. LEXIS 119973, at *14–15; *see also Guzman v. News Corp.*, No. 09 Civ. 9323 (BSJ) (RLE), 2012 U.S. Dist. LEXIS 91031, at *6 (S.D.N.Y. June 29, 2012) (granting motion for a protective order where the executive's "association with [the individual alleged to have harassed plaintiff], even as direct supervisor, [did] not immediately confer 'unique knowledge' on [that individual's] relationship with . . . employees"); *Application of Effecten-Spiegel AG*, 2018 U.S. Dist. LEXIS 135838, at *5 (quashing subpoena where the executive's "single meeting . . . a decade ago" was not relevant to the litigation).

Harapeti's claims in the Florida Action concern discrete instances of alleged discrimination carried out by *local decisionmakers*, including: (1) allegations that Harapeti was paid less than her younger female and male counterparts; (2) that Harapeti was not promoted to a full time position based on her age; (3) that Harapeti suffered sex-based discrimination based on discrete acts occurring in 2017; and (4) related retaliation claims.  *See* Florida Action, at (ECF No. 40, Third Amended Complaint).  Stated simply, the Florida Action involves claims unique to Harapeti's experience at WFOR and her interactions with her superiors there, including individualized claims of age and gender-based discrimination and retaliation, all of which involve only Harapeti and her immediate supervisors at WFOR—and Harapeti and her local supervisors *only*.[13]

In his former capacity as Senior Vice President of News for the CBS Television Stations Group, Mr. Friend had the type of responsibilities that come with holding such an executive position, including high-level oversight of news operations at the 13 local CBS owned-and-

---

[13] As noted in the Introduction and Background, *supra*, while Harapeti's Florida Action was originally presented as a collective claim under the EPA, the Court in the Florida Action denied Harapeti's request and such claims have been dismissed.  Accordingly, the Florida Action is proceeding on Harapeti's individual claims only.

operated television stations throughout the United States that have news departments.  *See* **Ex. D**, Friend Decl., at ¶¶ 2–9.  Mr. Friend confirms that he was not involved in the management of local personnel, including those personnel at WFOR, and that he did not have the authority to make hiring and firing decisions, or to determine any other conditions of the local news employees' employment.  *See id.* at ¶¶ 6–7, 9.  Those personnel decisions, the very decisions at issue in the Florida Action, were left to local management at WFOR, *i.e.* the News Director and General Manager.  *Id.*  Critically, Mr. Friend's has absolutely no knowledge of Harapeti's employment, her pay, or any complaints Harapeti may have raised while employed at WFOR—even further, Mr. Friend had no idea who Harapeti was prior to January of 2021.  *See id.* at ¶¶ 10–11.  Mr. Friend was also not involved in, and has no knowledge of, as may be relevant, the pay of other reporters and producers at WFOR, such as those individuals Harapeti contends are male and/or younger comparators.[14]  *See id.* at ¶¶ 12–15.  As Mr. Friend himself explains, his responsibilities did not involve, nor did he have authority over, the granular decisionmaking at the local station level such that he would be involved in, or have any knowledge of, any facts relevant to the Florida Action.  *See id.* at ¶¶ 6–15.  Thus, Mr. Friend lacks any personal or unique knowledge of matters relevant to the Florida Action, all of which concern *local* employment decisions purportedly made by *local* management regarding Harapeti and *Harapeti alone*.

The deposition testimony taken in the Florida Action—including from Harapeti herself—confirms that Mr. Friend lacks the requisite personal or unique knowledge to render his deposition appropriate under the apex doctrine.  This Court need not look any further than Harapeti's own

---

[14] To the extent Mr. Friend was consulted on hiring decisions at WFOR, Mr. Friend makes clear that his discussions were limited to high-ranking talent such as anchors and senior, full-time reporters.  *See* **Ex. D**, Friend Decl., at ¶ 8.  Stated differently, Mr. Friend was not consulted on the hiring of Harapeti's alleged comparators.  *See id.* at ¶¶ 8–9, 12–14.  Indeed, Mr. Friend expressly confirms his lack of involvement with, and knowledge of, the individuals Harapeti identifies as comparators.  *See id.*

testimony.  At her deposition, Harapeti confirmed that she had no knowledge as to whether Mr.

Friend was involved in any decision related to her employment at WFOR:

> **Q:** Do you know whether or not David Friend specifically was involved in any employment decision related to you at WFOR?
>
>           *     *     *
>
> **THE WITNESS:** <u>I do not have personal knowledge.</u>
>
>           *     *     *
>
> **Q:** Do you know specifically whether David was ever consulted -- David Friend -- in terms of whether or not to make you a full-time reporter?
>
>           *     *     *
>
> **THE WITNESS:** I do not specifically know.

*See* Deposition Transcript of Silva Harapeti, June 22, 2021, attached hereto as **Exhibit E**, at 24:2–

19, 25:14–18 (emphasis added).

      Testimony from WFOR's managers and supervisors also confirms that Mr. Friend

possesses no knowledge relevant to the dispute in the Florida Action.  As Mr. Friend notes,

personnel decisions at stations such as WFOR were left to the local News Director and the local

General Manager.  *See* **Ex. D**, Friend Decl., at ¶¶ 6–7.  Both WFOR's News Director, Elizabeth

Roldan ("Ms. Roldan"), and General Manager, Adam Levy ("Mr. Levy"), confirm Mr. Friend's

lack of knowledge.

      First, Adam Levy ("Mr. Levy"), the General Manager of WFOR during all relevant time

periods, verified that Mr. Friend lacks any knowledge pertinent to the Florida Action:

> **Q:** Have you had any discussions with David Friend at any point in time about Silva Harapetian?
>
> **A:** No.
>
> **Q:** Do you have any information to suggest that . . .  David [Friend] w[as] consulted on any employment decisions involving Silva Harapetian?
>
> **A:** No.

\*        \*        \*

**Q:**    To your knowledge, was David Friend involved in the hiring of per diem employees at WFOR?

 **A:**    No.

\*        \*        \*

**Q:**    To your knowledge, was David Friend involved in decisions about what to pay per diem reporters or producers at WFOR?

**A:**    No.

Deposition Transcript of Adam Levy, June 15, 2021, attached hereto as **Exhibit F**, at 9:10–19, 10:18–19, 78:3–23.    Second, Mr. Roldan, the News Director for nearly a decade, until approximately December of 2020, responsible for managing news personnel at WFOR likewise confirmed that, to her knowledge, Mr. Friend was not involved in any employment decision relating to Harapeti:

**Q:**    Do you have any knowledge as to whether David Friend was consulted on any employment decision involving Silva Harapeti?

**A:**    No.

*See* Deposition Transcript of Elizabeth Roldan, July 6, 2021, attached as **Exhibit G** ("Roldan Depo."), at 12:7–13:9, 97:15–18.    Ms. Roldan also confirmed that Mr. Friend was not involved in decisions involving freelance reporters or producers at WFOR:

**Q:**    Do you have any knowledge of David Friend being involved in the hiring of per diem reporters at WFOR?

**A:**    That, I – I don't recall that, no.

\*        \*        \*

**Q:**    Do you have any knowledge of David Friend being involved in decisions about what to pay per diem reporters or producers at WFOR?

**A:**    No.

*Id.* at 97:23–98:9.  Although Mr. Friend was sometimes consulted with respect to the hiring of talent, such consultations were limited to high-ranking talent.  *See id.* at 40:11–41:13; **Ex. D**, Friend Decl., at ¶ 8.[15]  Critically, Mr. Friend's limited involvement with that aspect of local news department management does not, in any respect, indicate that he may possess knowledge relevant to the issues in the Florida Action, issues that concern Harapeti and conduct relating to Harapeti's employment carried out by local management at WFOR.  Indeed, such decisionmaking was left to individuals such as Mr. Levy and Ms. Roldan.  *See* **Ex. D**, Friend Decl., at ¶¶ 6–7; **Ex. G**, Roldan Depo., at 77:5–12 (confirming that the ultimate decisionmaking rested with local management at WFOR).

The testimony of Ms. Roldan and Mr. Levy—and perhaps most importantly, of Harapeti—confirms that there is no nexus between the decisions relating to Harapeti at issue in the Florida Action and Mr. Friend.  The record in the Florida Action does not suggest that Mr. Friend possesses knowledge of Harapeti's employment at WFOR or any other facts material to the Florida Action, let alone the personal or unique knowledge necessary for Harapeti to overcome the apex doctrine's protection.  *See, e.g.*, *Diesel Props*, 2008 U.S. Dist. LEXIS 97862, at *5 (quashing subpoena where the executive's affidavit stating that he had "no unique personal knowledge that is germane to the case" was further supported by the testimony of other witnesses).

Mr. Friend's lack of knowledge on these issues renders any deposition unnecessary, unduly burdensome, inconvenient, and harassing within the meaning of Rules 26 and 45.  The complete

---

[15] Ms. Roldan also confirmed that Mr. Friend's consultations were largely limited to high-ranking talent such as anchors and, as noted, was not involved in any of the decisions at issue in the Florida Action.  *See* **Ex. G**, Roldan Depo., at 40:11–41:13 (noting that any discussions with Mr. Friend regarding reporters occurred in circumstances where a reporter was looking to make a lateral move within the CBS owned-and-operated stations), 63:18–22, 66:7–9, 74:20–77:12 (noting that if Mr. Friend disliked a particular hire, that would not foreclose Ms. Roldan from nonetheless hiring that individual).

absence of overlap between the matters at issue in the Florida Action and Mr. Friend's responsibilities as Vice President of News, and the knowledge he possesses as a result of that role, confirms that the only reason Harapeti is pursuing Mr. Friend's deposition is for purposes of harassment. Mr. Friend's testimony would not bear on the particularized allegations in the Florida Action as Mr. Friend lacks any "relevant knowledge to add to what [Harapeti] already know[s]" from the depositions already taken in this case. *See Younes*, 2015 U.S. Dist. LEXIS 191811, at *11–12. Absent knowledge or involvement in Harapeti's employment at WFOR, or knowledge of any decisions at issue in the Florida Action, Harapeti is incapable of "specifically t[ying] any information sought from [Mr. Friend] to any material matter in the case," and his deposition is inappropriate. *Novartis Pharms. Corp.*, 2015 U.S. Dist. LEXIS 109997, at *6.

Simply, Harapeti cannot "make a showing that any deposition of [Mr. Friend] would not be redundant with the sworn statement he has already provided"—which is supported by other deponents' testimony—"or that he has any unique personal knowledge relevant to the [Florida Action]." *Application of Effecten-Spiegel AG*, 2018 U.S. Dist. LEXIS 135838, at *4. Accordingly, Mr. Friend is entitled to apex protection and the Subpoena must be quashed. *See id.* at *3 (quashing deposition subpoena that subjected the executive to "an undue burden" where he lacked unique or personal knowledge relevant to the litigation); *Guzman*, 2012 U.S. Dist. LEXIS 91031, at *5–6 (granting protective order where plaintiffs did not "produce[] any evidence that [the executive] has any special or unique knowledge that could not be obtained elsewhere," and his "testimony would therefore at best be duplicative"); *Diesel Props*, 2008 U.S. Dist. LEXIS 97862, at *5 (precluding the executive's deposition where the record did not suggest that his "testimony would be relevant and non-duplicative"); *see also Reif v. CNA*, 248 F.R.D. 448, 454 (E.D. Pa. 2008) (requiring plaintiffs to show the executive "possessed any special or personal unique knowledge of the

[plaintiff's] termination"); *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. Sept. 15, 2015) (granting motion to quash and for a protective order where the plaintiff failed to show that high-ranking executives had unique, non-repetitive firsthand knowledge about the matters at issue).[16]

### B.    The Apex Doctrine Requires Harapeti to Make an Effort to Obtain The Information Sought from Mr. Friend Through Less Burdensome Means; She Has Not Done So Here.

As a threshold point, it is unclear what relevant testimony Harapeti hopes to obtain from Mr. Friend.  Regardless, Harapeti has not exhausted other avenues of discovery available to her before seeking to depose an executive such as Mr. Friend.

Despite the fact that the Florida Action has been pending for over a year and discovery is only two weeks from closing, Harapeti has made no effort to take the deposition of a corporate representative pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.  Movant previously offered a Rule 30(b)(6) corporate representative deposition, which would be the far less intrusive and burdensome means of obtaining additional information; however, Harapeti declined that offer.  Instead, Harapeti now opts to burden Movant and a former top-level executive who has no connection to, or knowledge of any facts relevant to, the Florida Action.  Nor has Harapeti made any effort to obtain the discovery through other less-intrusive methods, such as through interrogatories in the Florida Action.  *See Ford Motor Co.*, 2011 U.S. Dist. LEXIS 67227, at *12

---

[16]  Although not binding on this Court, the case of *Tompkins v. Don Cesar Resort Hotel*, No. 8:10-CV-06460T-30EAJ, 2010 U.S. Dist. LEXIS 162780 (M.D. Fla. 2010), is particularly instructive. In *Tompkins*, the plaintiff sought to depose an executive in relation to allegations that the defendant corporation "discriminated against Plaintiff and other employees based on their race/color and failed to properly compensate Plaintiff and other employees for overtime work."  *Id.* at *1. Because the executive had "no more than a general understanding of Defendant's policies, procedures, and practices," and because "decisions regarding implementation of policies and procedures [were] made at the local level," the court granted a protective order preventing his deposition.  *Id.* at *3.  Like the executive in *Tompkins*, Mr. Friend lacks direct knowledge of the facts related to Plaintiff's overtime and retaliation allegations under the FLSA.  *Id.* at *5.

(identifying interrogatories as one method of "less burdensome means"). The apex doctrine requires Harapeti to pursue these means before considering an apex deposition and courts regularly preclude a deposition of a high-ranking executive where the party seeking the deposition of a high-ranking executive has not yet deposed a corporate representative pursuant to Rule 30(b)(6). For example, the Southern District has denied a motion to compel the depositions of two executives finding that, "if Defendants prefer to proffer a Rule 30(b)(6) witness to testify on behalf of the corporation, other than the two executives whose depositions were noticed, there can be no harm to Plaintiffs." *In re Ski Train Fire,* 2006 U.S. Dist. LEXIS 29987, at *30; *cf. Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 104 (S.D.N.Y. 2001) (allowing deposition of executive where the party seeking the deposition had already deposed three Rule 30(b)(6) representatives). [17]

Moreover, as the Court in *Diesel Props* noted, "redundant depositions should be avoided." *Diesel Props*, 2008 U.S. Dist. LEXIS 97862, at *4; *see also Alliance Indus.*, 2010 U.S. Dist. LEXIS 119973, at *12 (noting that the apex doctrine considers "whether compelling the official's testimony would be cumulative to testimony from other sources within the subject enterprise").

---

[17] Courts elsewhere, including in the Eleventh Circuit, have similarly protected executives from depositions where no Rule 30(b)(6) deposition has taken place. *See, e.g.*, *Brown*, 2014 U.S. Dist. LEXIS 7721, at *10 (less intrusive means includes "deposing a Rule 30(b)(6) corporate representative and/or lower level employees"); *Skytruck Co. v. Sikorsky Aircraft Corp.*, No. 2:09-cv-267-FtM-99SPC, 2011 U.S. Dist. LEXIS 160482, at *5 (M.D. Fla. May 11, 2011) (granting motion to protect the executive from deposition where defendant offered a Rule 30(b)(6) corporate representative and other employees with relevant knowledge for deposition); *Reif v. CNA*, 248 F.R.D. 448, 454 (E.D. Pa. 2008) (denying motion to compel executive's deposition and ruling tha the plaintiffs "must avail themselves of other discovery tools" such as a Rule 30(b)(6) deposition first); *Mallory v. Wells Fargo Bank, N.A.*, No. 3:19-cv-744, 2021 U.S. Dist. LEXIS 113332, at *5 (M.D. Pa. June 17, 2021) (granting a motion to quash where "the information [p]laintiff seeks to learn from the current and former CEOs as to 'relevant issues about the case' can likely be obtained through lower level corporate officers by way of notice of deposition pursuant to Rule 30(b)(6)"); *Ciarrocchi v. Unum Grp.*, 2009 U.S. Dist. LEXIS 138532, at *8–9 (D.N.J. Aug. 27, 2009) (denying motions to depose two of the defendants' executives where the plaintiffs had not yet deposed a Rule 30(b)(6) corporate designee).

Indeed, "[u]ness it can be demonstrated that a corporate official has some unique knowledge of the issues in the case, it may be appropriate to preclude a [] deposition of a highly-placed executive while allowing other witnesses with the same knowledge to be questioned." *Burns*, 2007 U.S. Dist. LEXIS 40037, at *11 (quotation and citation omitted).  Here, Harapeti has deposed those individuals responsible for supervising her and who she alleges had direct involvement in the decisions at issue in the Florida Action, Mr. Levy and Ms. Roldan.  Mr. Friend will offer nothing more than what Mr. Levy and Ms. Roldan have already testified to—namely, a complete lack of knowledge concerning any facts that may be relevant to the Florida Action.  Mr. Friend confirms this lack of knowledge in his own declaration.  Thus, any testimony from Mr. Friend is also duplicative and unnecessary.

Being dissatisfied with the absence of evidence is not a valid basis for Harapeti to commence a crusade of harassment against Movant's executives.  There is no evidence to support Harapeti's substantial and untenable reach for the top of the proverbial pyramid.  The apex doctrine requires more and forbids depositions such as Mr. Friend's in the absence of other efforts to obtain the information sought.  For this additional reason, the apex doctrine applies and the Subpoena should be quashed, or a protective order granted as it relates to Mr. Friend's deposition.

## II. TO THE EXTENT HARAPETI INTENDS TO RELY ON THE "SERVICE" OF THE FIRST SUBPOENA TO COMPEL MR. FRIEND TO SIT FOR A DEPOSITION, SUCH SERVICE WAS INEFFECTIVE AND THE SUBPOENA SHOULD BE QUASHED.

As of this submission, Mr. Friend has not been served with the Subpoena and it is not known whether service efforts are underway. However, it is not clear whether Harapeti contends that her "service" of the First Subpoena on August 7, 2021 is somehow sufficient to obligate Mr. Friend to sit for a deposition pursuant to the Subpoena. In the event that Harapeti does advance this untenable position, Movant notes that First Subpoena—and by extension, the Subpoena—should be quashed for the independent reason that Harapeti failed to personally serve Mr. Friend with the First Subpoena.

Pursuant to Federal Rule of Civil Procedure 45, serving a subpoena "requires delivering a copy to the named person." Fed. R. Civ. P. 45(b). Courts in this Circuit have deemed a subpoena insufficiently served where, as here, the subpoena was not "personal[ly] deliver[ed] upon the party being served." *See, e.g.*, *Accurso v. Cooper Power Sys.*, No. 06CV848S, 2008 U.S. Dist. LEXIS 47621, at *12 (W.D.N.Y. June 19, 2008) ("This Court . . . agrees with the majority of jurisdictions (and commentators) and holds that Rule 45(b)(1) requires personal delivery of a subpoena upon the party being served, absent an Order to the contrary authorizing alternative service."). While a "recent trend" allows for alternative service, courts in this Circuit still "do not give serving parties carte blanche" to do as they please regarding service. *See Kenyon v. Simon & Schuster, Inc.*, No. 16 Misc. 327 (P1), 2016 U.S. Dist. LEXIS 140917, at *8 (S.D.N.Y. Oct. 11, 2016). Rather, "the weight of authority in this Circuit requires first a diligent attempt to personally serve the commanded person" before applying to the court to serve by alternative means. *See id.* at *10. Here, Harapeti has neither personally served the First Subpoena on Mr. Friend, nor made any request to serve by alternative means.

Harapeti attempted to "serve" the First Subpoena on Mr. Friend by leaving it with the doorman of a building in which Mr. Friend and his wife own an apartment.  *See* **Ex. D**, Friend Decl., at ¶ 16.  The apartment building is not Mr. Friend's permanent residence, nor was the doorman authorized to accept service of legal documents on Mr. Friend's behalf.  *See id.*  In addition, Harapeti's service was not "reasonably designed" to ensure Mr. Friend's receipt of the First Subpoena—for example, there was nothing about her service of the subpoena that "required [Mr. Friend] to acknowledge [its] receipt."  *See, e.g.*, *Accurso*, 2008 U.S. Dist. LEXIS 47621, at *12 (considering sufficiency of service of a subpoena and citing the "concern that [the non-party] may have no knowledge of this action or the fact that he is sought as a witness").  Further, even if Harapeti's service here—*i.e.*, to a doorman at an apartment building at which Mr. Friend has a non-permanent residence—constitutes a "diligent" attempt to personally serve the subpoena, Harapeti nonetheless failed to seek leave to use alternative means of service to serve the First Subpoena (or the Subpoena, for that matter).

Thus, under either the "traditional[]" interpretation of Rule 45 requiring personal service or the "trend" in the Second Circuit of allowing alternative service, the purported "service" of the First Subpoena directed to Mr. Friend was insufficient.  *Kenyon*, 2016 U.S. Dist. LEXIS 140917, at *8.  This Court should "not sanction [Harapeti's] departure from normal service requirements absent sufficient justification." *Id*. at *11 (directing the plaintiff to personally reserve the subpoena on the nonparty, despite where the nonparty had "received, reviewed, and partially complied with" the subpoena, because the plaintiff's failure to attempt personal service and to seek leave to serve by alternative means rendered her service "defective").  Accordingly, this Court should quash the First Subpoena to the extent Harapeti intends to rely on it to accomplish service, as such service was plainly noncompliant with Rule 45(b)(1) and this Circuit's precedent.

## **CONCLUSION**

Both the First Subpoena and the Subpoena are substantively infirm—it is clear that Harapeti's attempt to take Mr. Friend's deposition runs afoul of the apex doctrine and is an overt attempt at harassment given the complete absence of a nexus between the issues presented in the Florida Action and the knowledge Mr. Friend possesses.  Mr. Friend has confirmed, as did all of the other deponents in the Florida Action, that Mr. Friend has no personal or unique knowledge of the facts underpinning Harapeti's allegations in the Florida Action.  Harapeti has also made no effort to obtain whatever information she believes Mr. Friend possesses through less intrusive means.  Pursuant to the apex doctrine, Mr. Friend's deposition is presumptively burdensome and harassing, and the record confirms that the protections of the apex doctrine to Mr. Friend, a non-party who possesses no unique knowledge of—and whose executive responsibilities were not tethered to—any facts relevant to Harapeti's allegations in the Florida Action.  Moreover, as of this writing, Harapeti failed to comply with the service requirements under Rule 45.

For the foregoing reasons, CBS respectfully requests that the Court grant this Motion, quash the First Subpoena and the Subpoena under Rule 45 and/or enter a protective order pursuant to Rule 26, and grant such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted this 18th day of August, 2021.

BAKER & MCKENZIE LLP
*Attorneys for CBS Television Stations, Inc.*
452 Fifth Avenue
New York, NY 10018
Telephone: (212) 626-4100
Facsimile: (212) 310-1632


By:  /s/ *Blair J. Robinson*
Blair J. Robinson, Esq.
New York Bar No. 5361209
blair.robinson@bakermckenzie.com

Paul C. Evans, Esq.
New York Bar No. 5824438
paul.evans@bakermckenzie.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 18, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via email.

By: */s/ Blair Robinson*          
Blair J. Robinson, Esq.

**SERVICE LIST**

**IN RE: MOTION TO QUASH SUBPOENA**
**FOR DEPOSITION SERVED ON DAVID FRIEND**

**CASE NO. _____**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Related Case Pending in the United States District Court
for the Southern District of Florida styled *Silva Harapeti*
*v. CBS Television Stations Inc., et al.*, No. 20-cv-22995-KMW

Peter M. Hoogerwoerd, Esq.
REMER & GEORGES-PIERRE, PLLC
44 West Flagler Street
Suite 2200
Miami, Florida 33130
pmh@rgpattorneys.com
Phone: (305) 416-5000
Facsimile: (305) 416-5005

*Attorney for Silva Harapeti*