# Exhibit E

## to Movant's Motion to Quash

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:20-CV-20961-KMW

SILVA HARAPETI, and other similarly
situated individuals,

      Plaintiff(s),

vs.

CBS TELEVISION STATIONS INC., a
Foreign Profit Corporation, et al.,

      Defendants.
_____/

Baker & McKenzie, LLP
1111 Brickell Avenue
Suite 1700
Miami, Florida 33131
Tuesday, June 22, 2021
10:23 a.m. - 4:40 p.m.

      VIDEOTAPED DEPOSITION OF SILVA HARAPETI
      Taken before Janely Sanchez, Notary Public in
and for the State of Florida at Large, pursuant to Notice
of Taking Deposition filed in the above-mentioned cause.

```
 1   APPEARANCES:
 2                         BAKER MCKENZIE, LLP
                           Blair Robinson, Esquire
 3                         452 5th Avenue
                           New York, New York 10018
 4                         Blair.Robinson@bakermckenzie.com
 5                         REMER & GEORGES-PIERRE, PA
                           Peter Michael Hoogerwoerd, Esquire
 6                         44 West Flagler
                           Suite 2200
 7                         Miami, Florida 33130
                           Pmhassistant@rgpattorneys.com
 8
 9
10
11
     Also Present:
12
         Paul Smith, Videographer
13            -TruVid, LLC
14       Michelle Vachris, Inhouse counsel appearing via Zoom
              -CBS Television Stations, Inc.
15
         Christina Dines, Litigation Associate
16            -Baker & McKenzie, LLP
17
18
19
20
21
22
23
24
25
```

Page 4

|     |                                                                          |
| --- | ------------------------------------------------------------------------ |
| 1   | P R O C E E D I N G S                                                    |
| 2   | *****                                                                    |
| 3   | THE VIDEOGRAPHER:  Good morning.  We're going on                         |
| 4   | record at 10:23 a.m. on Tuesday June 22, 2021.  This                     |
| 5   | is Media Unit 1 in the video recorded deposition of                      |
| 6   | Silva Harapeti taken in the matter Silva Harapeti                        |
| 7   | versus CBS Television Stations, Inc.                                     |
| 8   | This deposition is being held at Baker &                                 |
| 9   | McKenzie, LLP located at 1111 Brickell Avenue Suite                      |
| 10  | 1700 Miami, Florida.  My name is Paul Smith from the                     |
| 11  | firm Veritext.  I'm the videographer and the court                       |
| 12  | reporter is Janely Sanchez from the firm of Veritext.                    |
| 13  | Would counsel please introduce yourselves after                          |
| 14  | which the court reporter will swear in the witness.                      |
| 15  | MR. HOOGERWOERD:  Peter Hoogerwoerd on behalf of                         |
| 16  | Silva Harapeti.                                                          |
| 17  | MR. ROBINSON:  Blair Robinson on behalf of the                           |
| 18  | Defendants.                                                              |
| 19  | THE REPORTER:  Please raise your right hand.                             |
| 20  | THE WITNESS:  (Complies.)                                                |
| 21  | THE REPORTER:  Do you swear or affirm the                                |
| 22  | testimony you will give will be the truth, the whole                     |
| 23  | truth and nothing but the truth?                                         |
| 24  | THE WITNESS:  Yes.                                                       |
| 25  | THE REPORTER:  Thank you.                                                |

```
                                                          Page 5
 1                      SILVA HARAPETI,
 2     having been first duly sworn, testified under oath as
 3                          follows:
 4                      DIRECT EXAMINATION
 5   BY MR. ROBINSON:
 6        Q.   Good morning, Ms. Harapeti.  How are you?
 7        A.   Good morning.
 8        Q.   My name is Blair Robinson.  I introduced myself
 9   off the record; I'll now do it on.  I'm counsel for CBS
10   in the two lawsuits in which you are a Plaintiff.
11             I know that you testified last year in a hearing
12   in connection with this matter.  Do you recall that?
13        A.   I do.
14        Q.   Have you had your deposition taken before?
15        A.   Ever?
16        Q.   Ever.
17        A.   Uh, yes.
18        Q.   When was that?
19        A.   Some years ago.  I can't remember the year.
20   Probably --
21        Q.   What kind of matter was it?
22        A.   It was a car accident.
23        Q.   Were you a Plaintiff or a Defendant?
24        A.   I was a Plaintiff.
25        Q.   Um, other than that experience, have you had
```

Page 23

1    Q.   You know now?
2    A.   Yes.
3    Q.   Is that part of the case that you're bringing
4    against CBS?
5    A.   I should have.
6    Q.   Well, is it part of it, though?
7    A.   Not on black and white on a piece of paper, no.
8    Q.   Okay.  You "should have," what do you mean by
9    you "should have"?  What did you mean by that?
10   A.   At the time when all of this was happening I did
11   not know what I know now, which is on-air employment
12   decisions were made, um, from New York by two people who
13   were significantly, um, bias in their hiring and
14   employment processes.
15   Q.   Okay.  Which two people are you referring to?
16   A.   David Friend and Peter Dunn.
17   Q.   And you know that from the newspaper?
18   A.   Um, yes.
19   Q.   Do you have any personal knowledge as to whether
20   Peter Dunn was involved in any employment decision
21   related to you at WFOR?
22   A.   I have general knowledge.
23   Q.   My -- my question is whether or not you know if
24   Peter Dunn specifically was involved in any employment
25   decision related to you at WFOR?

Page 24

```
 1        A.    I do not.
 2        Q.    Do you know whether or not David Friend
 3   specifically was involved in any employment decision
 4   related to you at WFOR?
 5              MR. HOOGERWOERD:  Objection.
 6              THE WITNESS:  I believe there was a witness that
 7        testified, so.
 8   BY MR. ROBINSON:
 9        Q.    Well, I'm asking whether or not you -- you have
10   reason to believe, whether or not you know any specifics
11   of David Friend's involvement as it relates to employment
12   decisions involving you at WFOR?
13              MR. HOOGERWOERD:  Objection.
14              THE WITNESS:  I'm sorry, clarify the question.
15        Do I have reason to believe or do I know --
16              MR. ROBINSON:  No.  Do you know any specifics?
17              MR. HOOGERWOERD:  Do you have any personal
18        knowledge?
19              THE WITNESS:  I do not have personal knowledge.
20   BY MR. ROBINSON:
21        Q.    You have no personal knowledge, right?
22        A.    I have general knowledge, I don't have personal
23   knowledge.
24        Q.    You don't have personal knowledge.  And your
25   general knowledge is based on the newspaper; is it not?
```

1           MR. HOOGERWOERD:  Objection.
2           THE WITNESS:  Um, my general knowledge is also
3      what was talked about in the newsroom when it came to
4      employment, and generally speaking, employment or
5      full-time reporter employment had to be a confirmed
6      and verified and approved by New York.
7   BY MR. ROBINSON:
8      Q.   Do you know specifically whether Peter was ever
9   consulted on whether or not to make you a full-time
10  reporter?
11          MR. HOOGERWOERD:  Objection.
12          THE WITNESS:  I do not specifically know.
13  BY MR. ROBINSON:
14     Q.   Do you know specifically whether David was ever
15  consulted -- David Friend -- in terms of whether or not
16  to make you a full-time reporter?
17          MR. HOOGERWOERD:  Objection.
18          THE WITNESS:  I do not specifically know.
19  BY MR. ROBINSON:
20     Q.   Um, as you sit here today -- I know we covered
21  the fact that race is not part of the lawsuit, right?
22     A.   (Nods head.)
23     Q.   You're not -- your lawsuit is not claiming that
24  you are treated differently because of your race; is that
25  right?

1          MR. HOOGERWOERD:  Asked and answered.
2          THE WITNESS:  I answered that question already.
3    BY MR. ROBINSON:
4      Q.    You can answer it again.
5      A.    It's not black and white on a piece of paper,
6    no.
7      Q.    But sitting here today you feel as though -- if
8    I'm understanding what you're saying, that you think your
9    race did play a role?
10     A.    That's correct.
11     Q.    Okay.  Um, and why is that?
12     A.    Because it has been made clear that that was
13   part of the employment decisionmaking process and while
14   on a local level news directors and general managers may
15   have seemed to have had decisionmaking power, the
16   ultimate decision was really made by Peter Dunn and David
17   Friend.
18     Q.    And your personal knowledge for that statement
19   is based on what?
20     A.    Um, based on what I've read on the paper, based
21   on conversations that I've had, basked on looking back
22   and looking at series of events and how things unfolded,
23   things sort of start making sense.
24     Q.    What conversations specifically have you had
25   that suggest to you that Peter and David were involved in