# Exhibit F

to Movant's Motion to Quash

Page 1

1              UNITED STATES DISTRICT COURT

               SOUTHERN DISTRICT OF FLORIDA

2

3                 CASE NO. 1:20-CV-20961-KMW

4

     SILVA HARAPETIAN

5    and other similarly situated individuals,

6             Plaintiff,

7    vs.

8    CBS TELEVISION STATIONS, INC.

     and CBS BROADCASTING, INC.,

9

              Defendant.

10   _____/

11

12

13

14                          Miami, Florida

                            Tuesday, 10:04 A.M.-1:30 P.M.

15                          June 15, 2021

16

17        VIDEOCONFERENCE DEPOSITION OF ADAM LEVY

18

19      Taken before Carla D. Smith, RPR, RMR, Notary Public

20   in and for the State of Florida at Large, pursuant to

21   Notice of taking Deposition in the above cause.

22

23

24

25

Page 2

```
 1    APPEARANCES:
 2    ATTORNEYS FOR PLAINTIFF
 3
              Remer & Georges-Pierre, P.A.
 4            44 West Flagler Street
              Suite 2200
 5            Miami, FL  33130
 6
 7    BY:     PETER M. HOOGERWOERD, ESQUIRE
              pmh@rgpattorneys.com
 8            CRISTOBAL BOBADILLA-GAMBOA, ESQUIRE
 9
10    ATTORNEYS FOR DEFENDANT
11            Baker & McKenzie LLP
              452 Fifth Avenue
12            New York, NY 10018
13    BY:     BLAIR J. ROBINSON
              blair.robinson@bakermckenzie.com
14            BENJAMINE C. DAVIS, ESQUIRE
              benjamin.davis@bakermckenzie.com
15
16    Also Present:
17    Silva Harapetian, Plaintiff
18    Michelle Vachris, Associate General Counsel CBS
19
20
21
22
23
24
25
```

Page 3

1
                          INDEX
2
3    WITNESS                                    PAGE
4       Direct Examination by Mr. Hoogerwoerd  .........4
5       Cross-Examination by Mr. Robinson    ...........77
6       Redirect Examination by Mr. Hoogerwoerd  ......79
7
8
9
                         EXHIBITS
10
11   NUMBER                DESCRIPTION              PAGE
12   Exhibit 1      CBS Per Diem Agreement ............40
13
     Exhibit 2      E-mail from Gary Nelson Re: .......59
14                  Resending dated 9/18/18
15
     Exhibit 3      E-mail from Gary Nelson Re: CBS ...65
16                  Investigation dated 10/2/18
17
18
19
20
21
22
23
24
25

                                                      Page 4

1              THE COURT REPORTER:  Due to the need for

2       this deposition to take place remotely because of

3       the Government's order for social distancing, the

4       parties will stipulate that the court reporter

5       may swear in the witness via videoconference and

6       that the witness has verified he is fact, in

7       fact, Adam Levy.

8              Is there a stipulation by the parties?

9              MR. ROBINSON:  Yeah.  We agree to that.

10             MR. HOOGERWOERD:  Yes.  We agree to that.

11                    DIRECT EXAMINATION

12      BY MR. HOOGERWOERD:

13         Q.    Good morning, Mr. Levy.

14             My name is Peter Hoogerwoerd.  We are here to

15      take your deposition for consolidation purposes in two

16      cases; Silva Harapetian, her discrimination case and

17      also her Fair Labor Standard Act case which are two

18      separate case numbers.

19             I'm going to lay some ground rules.  Have you

20      had your deposition taken before, Mr. Levy?

21         A.    Yes.

22         Q.    Do you remember what that was for?

23         A.    Yes.

24         Q.    What was that for?

25         A.    What case was it for?

```
1    you send the pilot for Tracy to see?
2         A.    Tracy works for the station division.
3         Q.    CBS Television Stations Group?
4         A.    I think that's the name of it.
5         Q.    Okay.
6         A.    That runs the TV stations.
7         Q.    Was there ever a time you were working for
8    CBS at WFOR TV?
9         A.    Yes.
10        Q.    When did you start working for WFOR-TV?
11        A.    November of 2010.
12        Q.    What was your job title when you started at
13   WFOR?
14        A.    General manager.
15        Q.    Have you always held the same title?
16             MR. ROBINSON:  While he was at CBS?
17   BY MR. HOOGERWOERD:
18        Q.    While you were at WFOR?
19        A.    Yes.
20        Q.    And I imagine at some point you left WFOR-TV?
21        A.    Yes.
22        Q.    Why did you leave?
23        A.    My employment was terminated.
24        Q.    What's your understanding why you were
25   terminated from WFOR-TV?
```

Page 10

1        A.    The explanation I was given was that they
2    were going in a different direction.
3        Q.    Who provided that explanation to you?
4        A.    Peter Dunn.
5        Q.    Was there an interim general manager or
6    station manager after you left?
7        A.    My understanding was that Peter Dunn acted as
8    the interim general manager.
9        Q.    Do you know for what period of time?
10        A.    I don't know specifically.
11        Q.    When you left CBS -- I'm sorry.  Hang on one
12    second.
13              When you left WFOR-TV, who did you report to?
14        A.    Are you asking me at the time I left who did
15    I report to?
16        Q.    Yes, sir.
17        A.    Peter Dunn.
18        Q.    Did you ever report to David Friend?
19        A.    No.
20        Q.    Other than Peter Dunn, did you report to
21    anybody else?
22        A.    No.
23        Q.    What was Peter Dunn -- strike that.
24              How long did you report to Peter Dunn?
25        A.    10 years.

1        A.    Yes.

2        Q.    And without telling me anything other than a

3   yes or no answer to this question, does that agreement

4   contain a confidentiality provision?

5        A.    As far as I know, yes.

6        Q.    Okay.  We're approaching the end of my line

7   of questioning.

8             Do you have a recollection now after sometime

9   has passed as to who was the manager of the assignment

10  desk?

11       A.    Yes.  Her first name is Anastasia and I still

12  can't remember her last name.

13       Q.    Has all your testimony been truthful here

14  today, sir?

15       A.    It has.

16            MR. HOOGERWOERD:  Blair, do you have

17       anything?

18            MR. ROBINSON:  I have a few.

19                 CROSS-EXAMINATION

20  BY MR. ROBINSON:

21       Q.    Have you had any discussions with Peter Dunn

22  about Silva Harapetian?

23       A.    I'm sorry, Blair.  You broke up there.

24       Q.    Sure.

25            Have you had any discussions with Peter Dunn

Page 78

1    about Silva Harapetian at any point in time?

2         A.    No.

3         Q.    Have you had any discussions with David

4    Friend at any point in time about Silva Harapetian?

5         A.    No.

6         Q.    Do you have any information to suggest that

7    Peter or David were consulted on any employment

8    decisions involving Silva Harapetian?

9         A.    No.

10        Q.    To your knowledge, was Peter Dunn involved in

11   the hiring of per diem reporters at WFOR?

12        A.    No.

13        Q.    To your knowledge, was David Friend involved

14   in the hiring of per diem employees at WFOR?

15        A.    No.

16        Q.    To your knowledge, was Peter Dunn involved in

17   decisions about what to pay per diem reporters or

18   producers at WFOR?

19        A.    No.

20        Q.    To your knowledge, was David Friend involved

21   in decisions about what to pay per diem reporters or

22   producers at WFOR?

23        A.    No.

24             MR. ROBINSON:  I have no further questions.

25

1                    REDIRECT EXAMINATION

2    BY MR. HOOGERWOERD:

3         Q.    Sir, you were not privy to any of the

4    conversations between Liz Roldan and David Friend,

5    correct?

6         A.    No.

7         Q.    And same question for Peter Dunn.  You were

8    not privy to any of the conversations that Liz Roldan

9    may have had with Peter Dunn?

10        A.    No.

11             MR. HOOGERWOERD:  Read or waive?

12             MR. ROBINSON:  We'll read and sign.

13             MR. HOOGERWOERD:  Okay.  We'll order an

14        electronic mini and if you can send me, Carla,

15        your e-mail address in the chat so I can send you

16        the exhibits.

17       (This deposition was concluded at 1:30 P.M.)

18

19

20

21

22

23

24

25